IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF HAWAI`I

| | |
|---|---|
| The Arc in Hawaii, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civ. No. 20-00112-ACK-WRP |
| | ) |
| DB Insurance Co., Ltd., | ) |
| | ) |
| Defendant. | ) |

**ORDER GRANTING PLAINTIFF'S PARTIAL MOTION FOR SUMMARY JUDGMENT
AND GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT**

This case arises from a dispute between an insurance company and its insured as to whether successive policies limit employee dishonesty recovery and whether the policies cover employee theft due to forgery.  Plaintiff The Arc of Hawaii brought this lawsuit against Defendant DB Insurance Co., asserting claims for breach of contract and bad faith.  DB Insurance has moved for Summary Judgment and the Arc has moved for Partial Summary Judgment on its breach of contract claim. For the reasons discussed below, the Court GRANTS Plaintiff The Arc in Hawaii's Motion for Partial Summary Judgment, ECF No. 25, and GRANTS IN PART AND DENIES IN PART Defendant DB Insurance Co. Ltd.'s Motion for Summary Judgment, ECF No. 23.

## BACKGROUND

The following facts are undisputed and are principally drawn from the parties' concise statements of facts ("CSFs") and the evidentiary exhibits attached thereto.

### I. The Underlying Action

The Arc in Hawaii is a Hawaii nonprofit corporation that helps Hawaii residents with disabilities "secure the power to choose where and how they live, learn, work, and play in the community." Pl. Mot., ECF No. 25 at 2. Lola Jean Amorin was The Arc's bookkeeper and accountant from 1982 until 2017. Pl. CSF, ECF No. 26 ¶ 6. In March of 2017, The Arc discovered that Ms. Amorin had fraudulently stolen $6,969,165.27 from The Arc over the course of her employment. Id. ¶¶ 8, 15. Ms. Amorin's theft spanned from January 20, 1998, through January 31, 2017. Def. CSF, ECF No. 24 ¶ 13.

In the first of four schemes, Ms. Amorin would forge a check from The Arc to First Hawaiian Bank. Id. ¶ 14. She would forge The Arc's directors' signatures on company checks or obtain the signatures through false pretenses. Id. ¶ 15. Ms. Amorin would then personally deliver the check and request First Hawaiian Bank to issue an official bank check for the same amount to Hawaii Central Federal Credit Union, where she would deposit the check into her personal account. Id.

In the second scheme, Ms. Amorin issued forged checks from The Arc to Home Depot, and then paid for items on her own personal account at Home Depot.  Id. ¶ 16.

In the third scheme, when obtaining Costco prepaid cash cards for the company, Ms. Amorin would obtain additional cash cards for her own use.  Id. ¶ 17.

In the fourth scheme, Ms. Amorin used the company's Office Depot corporate credit card to purchase office equipment for her own personal use.  Id. ¶ 18.

On December 14, 2017, Ms. Amorin was indicted on several charges.  Decl. of Leiann Fountain, ECF No. 26-1 ¶ 33. After pleading "no contest" on all the charges, she was ultimately convicted of theft in the first degree, computer fraud in the first degree, money laundering, willful failure to file return, and attempt to evade or defeat tax.  Def. CSF ¶ 19.

## II.  The Insurance Policies

Defendant DB Insurance Co., Ltd., formerly known as Dongbu Insurance Co., Ltd., issued to The Arc consecutive year-long commercial property policies (each a "Policy" and collectively "the Policies") for five periods (each a "Policy Period" and collectively "the Policy Periods").  Broken down by Policy Period, The Arc's losses from the forged checks made or drawn by Ms. Amorin and from her dishonest acts total no less than the following amounts:

Policy No. DCF1200010-00 (Pl. CSF, Ex. 1):
June 4, 2012 to June 4, 2013: $505,834.01

Policy No. DCF1200010-01 (Pl. CSF, Ex. 2):
June 4, 2013 to June 4, 2014: $582,531.18

Policy No. DCF1200010-02 (Pl. CSF, Ex. 3):
June 4, 2014 to June 4, 2015: $604,521.04

Policy No. DCF1200010-03 (Pl. CSF, Ex. 4):
June 4, 2015 to June 4, 2016: $714,111.66

Policy No. DCF1200010-04 (Pl. CSF, Ex. 5):
June 4, 2016 to June 4, 2017: $365, 718.55

Pl. CSF ¶ 15.

Each Policy contains a "Causes of Loss – Special Form," which expressly excludes dishonest or criminal acts (the "Criminal Acts Exclusion"). See Pl. CSF, Exs. 1-5. Each Policy also contains a Commercial Property Enhancement Endorsement II (the "Enhancement Endorsement"), which provides extended coverage for forgery and employee dishonesty. Id.

### III. Terms of the Policies

The Court outlines the relevant policy provisions below:

First, each of the Policies includes a "Building and Personal Property Coverage Form," which outlines the general coverage afforded by the Policies:

**A. Coverage**
We will pay for direct physical loss of or damage to Covered Property at the premises described in the Declarations caused by or resulting from any Covered Cause of Loss.

**1. Covered Property**
Covered Property, as used in this Coverage Part, means the type of property described in this section, **A.1.**, and limited in **A.2.**, Property Not Covered, if a Limit of Insurance is shown in the Declarations for that type of property.

See Pl. CSF, Exs. 1-5.  The Policies also indicate what type of property is generally not covered:

**2. Property Not Covered**
Covered Property does not include:
**a.** Accounts, bills, currency, food stamps or other evidences of debt, money, notes or securities.

Id.  In turn, the main coverage form cross references other forms that clarify the type and scope of coverage, as well as any extended coverage beyond the general provision and any exclusions that limit coverage:

**3. Covered Causes of Loss**
See Applicable Causes of Loss Form as shown in the Declarations.

.  .  .

**5. Coverage Extensions**
Except as otherwise provided, the following Extensions apply to property located in or on the building described in the Declarations and or in the open (or in a vehicle) within 100 feet of the described premises.

.  .  .

**B. Exclusions And Limitations**
See applicable Causes of Loss Form as shown in the Declarations.

Id.  Specifically, the Causes of Loss Form clarifies the types of covered risks, and expressly excludes dishonest or criminal acts:

**A. Covered Causes Of Loss**
When Special is shown in the Declarations, Covered Causes of Loss means Risks Of Direct Physical Loss unless the loss is:
**1.** Excluded in Section **B.**, Exclusions . . .

. . .

**B. Exclusions**

. . .

**2.** We will not pay for loss or damage caused directly or indirectly by any of the following:

. . .

**h.** Dishonest or criminal act by you, any of your partners, members, officers, managers, employees (including leased employees), directors, trustees, authorized representatives or anyone to whom you entrust the property for any purpose:

**(1)** Acting alone or in collusion with others; or
**(2)** Whether or not occurring during the hours of employment.

This exclusion does not apply to acts of destruction by your employees (including leased employees); but theft by employees (including leased employees) is not covered.

Id.

Next, the Policies contain an Enhancement Endorsement, which sets out additional coverage provided by the Policies and limits such coverage based on each "occurrence":

**C. Building and Personal Property Coverage Form,** Section **A. Coverages,** Paragraph **A.5. Coverage Extensions,** is amended as set forth below. The limits of Insurance for the Coverage Extensions in this Endorsement are in addition to the applicable Limit of Insurance shown in the Declarations.

>> **1. . . . . .**
>>
>> **4. Building and Personal Property Coverage Form,**
>> Paragraph **A.5. Coverage Extensions,** is amended to
>> include the following. A $1,000,000 combined Blanket
>> Limit of Insurance applies in each occurrence to the
>> following coverage extensions:
>>
>>> **1. . . . .**
>>>
>>> **5. Forgery and Alteration**
>>>
>>> **6. . . . .**
>>
>> This $1,000,000 Blanket Limit of Insurance is the most
>> we pay for all loss or damage under any or all of the
>> above listed coverage extensions as a result of any
>> single occurrence. This Blanket Limit of Insurance
>> applies only to the above listed coverage extensions.
>> All other coverage extensions not listed above are
>> subject to the specific sublimits specified in the
>> coverage extension.

Id. Relevant here, the Enhancement Endorsement adds the

following enhanced coverage for forgery ("the Forgery

Provision"):

>> **q. Forgery and Alteration**
>>> **(1)** We will pay for loss resulting directly from
>>> forgery or alteration of, on or in any check, draft,
>>> promissory note, or similar written promise, order
>>> or direction to pay a certain sum in money, made or
>>> drawn by or drawn upon you, or made or drawn by one
>>> acting as your agent or claiming to have been so
>>> made or drawn.

Id. It likewise affords enhanced coverage for employee

dishonesty ("the Employee Dishonesty Provision"):

>> **m. Employee Dishonesty**
>>> **(1)** We will pay for direct loss of or damage to
>>> Business Personal Property, including "money" and
>>> "securities" resulting from dishonest acts
>>> committed by any of your employees acting alone or

- 7 -

in collusion with other persons (except you or your partner) with the manifest intent to:

    **(a)** Cause you to sustain loss or damage; and also

    **(b)** Obtain financial benefit (other than salaries, commissions, fees, bonuses, promotions, awards, profit sharing, pensions or other employee benefits earned in the normal course of employment) for:

        **(i)** Any employees; or

        **(ii)** Any person or organization.

Id. The Employee Dishonesty Provision specifies what constitutes an "occurrence":

**(3)** All loss or damage:

    **(a)** Caused by the same person or persons; or

    **(b)** Involving a single act or series of related acts;

is considered one occurrence.

Id. The Employee Dishonesty Provision also contains additional limitations, including a $250,000 sublimit:

**(4)** We will pay only for loss or damage you sustain through acts committed or events occurring during the Policy Period. Regardless of the number of years this policy remains in force or the number of premiums paid, no Limit of Insurance cumulates from year to year or period to period.

**(5)** This coverage ceases to apply to any dishonest acts by any employee immediately upon discovery by:

    **(a)** You; or

    **(b)** Any of your partners, officers or directors not in collusion with the employee; of any dishonest act committed by that employee before or after being hired by you.

The most we will pay in any one occurrence for loss or damage under this Coverage Extension is $250,000.

Id.

## IV.  Procedural Background

In March of 2017, The Arc filed a claim with DB Insurance seeking recovery for its loss of $2,372,716.44 suffered during the Policy Periods in connection with Ms. Amorin's scheme (Claim No. CCF1700003).  Compl., ECF No. 1 ¶ 30; Def. CSF, Ex. G.  On February 12, 2020, The Arc filed its Complaint in the First Circuit Court of the State of Hawaii. The Complaint charged Count I for Breach of Contract and Count II for Bad Faith.  Compl. ¶¶ 38-84.  DB Insurance removed the Complaint to this Court.  On December 30, 2020, The Arc filed a Partial Motion for Summary Judgment and Defendant filed a Motion for Summary Judgment, ECF Nos. 25 and 23, and CSFs in support, ECF Nos. 26 and 24.  On April 27, 2021, the parties both filed their opposition briefs, ECF Nos. 40 and 38, and CSFs in opposition, ECF Nos. 41 and 39.  On May 4, 2021, the parties filed reply briefs, ECF Nos. 42 and 44, and CSFs in reply, ECF Nos. 43 and 45.  This Court held a hearing on May 18, 2021, regarding this matter.

## STANDARD

Summary judgment is proper where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).  Rule 56(a) mandates summary judgment "against a party who fails to make a

showing sufficient to establish the existence of an element essential to the party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552 (1986); see also Broussard v. Univ. of Cal., 192 F.3d 1252, 1258 (9th Cir. 1999).

"A party seeking summary judgment bears the initial burden of informing the court of the basis for its motion and of identifying those portions of the pleadings and discovery responses that demonstrate the absence of a genuine issue of material fact." Soremekun v. Thrifty Payless, Inc., 509 F.3d 978, 984 (9th Cir. 2007) (citing Celotex, 477 U.S. at 323, 106 S. Ct. at 2553); see also Jespersen v. Harrah's Operating Co., 392 F.3d 1076, 1079 (9th Cir. 2004). "When the moving party has carried its burden under Rule 56[(a)] its opponent must do more than simply show that there is some metaphysical doubt as to the material facts [and] come forward with specific facts showing that there is a genuine issue for trial." Matsushita Elec. Indus. Co. v. Zenith Radio, 475 U.S. 574, 586–87, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986) (citation and internal quotation marks omitted and emphasis removed); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–48, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986) (stating that a party cannot "rest upon the mere allegations or denials of his pleading" in opposing summary judgment).

"An issue is 'genuine' only if there is a sufficient evidentiary basis on which a reasonable fact finder could find for the nonmoving party, and a dispute is 'material' only if it could affect the outcome of the suit under the governing law." In re Barboza, 545 F.3d 702, 707 (9th Cir. 2008) (citing Anderson, 477 U.S. at 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202). When considering the evidence on a motion for summary judgment, the court must draw all reasonable inferences on behalf of the nonmoving party. Matsushita Elec. Indus. Co., 475 U.S. at 587, 106 S. Ct. 1348, 89 L. Ed. 2d 538; see also Posey v. Lake Pend Oreille Sch. Dist. No. 84, 546 F.3d 1121, 1126 (9th Cir. 2008) (stating that "the evidence of [the nonmovant] is to be believed, and all justifiable inferences are to be drawn in his favor" (internal citation and quotation omitted)).

## DISCUSSION

The Court must interpret the relevant provisions in the Policies to decide whether they provide coverage for The Arc's losses stemming from Ms. Amorin's wrongful actions.[1] Neither party disputes that Ms. Amorin is an employee of The Arc whose dishonest conduct is covered by The Arc's Policies to some

---

[1]  The specific amounts of the losses occurring during each Policy Period are undisputed and thus deemed admitted.  See U.S. E.E.O.C. v. Glob. Horizons, Inc., 7 F. Supp. 3d 1053, 1058 (D. Haw. 2014); Local Rule 56.1(g).

extent.[2/]  The Arc argues that coverage is triggered by both the Employee Dishonesty Provision and the Forgery Provision found in the Enhancement Endorsement.  Pl. Mot. at 3-4.  In The Arc's view, it is entitled to recover the $250,000 sublimit under the Employee Dishonesty Provision for each of the five relevant Policies.  Id.  The Arc also argues that it should be entitled to recover under the Forgery Provision, with each Policy affording coverage up to $1,000,000 for forgery.  Id.

DB Insurance, for its part, asserts that it has fulfilled its obligation by paying a single sum of $250,000 triggered under the Employee Dishonesty Provision, and that there is no coverage under the Forgery Provision.  Def. Mot. at 1-2.  DB Insurance also moves for summary judgment on The Arc's claim of bad faith and argues The Arc's request for punitive damages should be dismissed as a matter of law.  Id.

The parties' competing positions stem from their differing interpretations of the language of the Enhancement Endorsement.

## I.    Rules of Construction for Insurance Policies

Under Hawaii law, courts look to the plain language of the insurance policy to determine the scope of the insurer's duties.  Dairy Rd. Partners v. Island Ins. Co., Ltd., 92 Haw.

---

[2/] At the hearing, DB Insurance's counsel agreed that Ms. Amorin was also an agent of The Arc and that she committed forgery, but asserted that her forgery was not covered by the Policies.

398, 411, 992 P.2d 93 (2000); see also Burlington Ins. Co. v. Oceanic Design & Const. Inc., 383 F.3d 940, 945 (9th Cir. 2004) ("In Hawaii, the terms of an insurance policy are to be interpreted according to their plain, ordinary, and accepted sense in common speech."). In the context of insurance coverage disputes, the court "must look to the language of the insurance policies themselves to ascertain whether coverage exists, consistent with the insurer and insured's intent and expectations." Haw. Ins. & Guar. Co. v. Fin. Sec. Ins. Co., 72 Haw. 80, 87, 807 P.2d 1256 (1991).

Further, insurance policies must be construed "in accordance with the reasonable expectations of a layperson." Hawaiian Isle Adventures, Inc. v. N. Am. Capacity Ins. Co., 623 F. Supp. 2d 1189, 1194 (D. Haw. 2009) (citing Dawes v. First Ins. Co. of Haw., 77 Haw. 117, 121, 883 P.2d 38 (1994)). Insurance contracts are "contracts of adhesion" and Hawaii law "ha[s] long subscribed to the principle that they must be construed liberally in favor of the insured and any ambiguities must be resolved against the insurer." Guajardo v. AIG Haw. Ins. Co., 118 Haw. 196, 202, 187 P.3d 580 (2008) (citing Dairy Rd. Partners v. Island Ins. Co., 92 Haw. 398, 411-12, 992 P.2d 93 (2000) (internal citations omitted)); see also Hart v. Ticor Title Ins. Co., 126 Haw. 448, 456, 272 P.3d 1215 (2012).

A contract is ambiguous "when its terms are reasonably susceptible to more than one meaning." Hawaiian Ass'n of Seventh-Day Adventists v. Wong, 130 Haw. 36, 45, 305 P.3d 452 (2013). But the mere fact that the parties offer competing interpretations of contract terms "does not render clear language ambiguous." State Farm Fire & Cas. Co. v. Pacific Rent-All, Inc., 90 Haw. 315, 324, 978 P.2d 753 (1999).

## II.  Breach of Contract Claim (Count I)

Each party has moved for summary judgment in its favor on The Arc's breach of contract claim. To prevail on a breach of contract claim under Hawaii law, plaintiff must establish: (1) the contract at issue; (2) the parties to the contract; (3) whether plaintiff performed under the contract; (4) the particular provision of the contract allegedly violated by defendants; (5) when and how defendants allegedly breached the contract; and (6) how the plaintiff was injured. Barber v. Ohana Military Cmtys., LLC, Civ. No. 14-00217 HG-KSC, 2014 WL 3529766, at *4 (D. Haw. July 15, 2014) (citing Evergreen Eng'rg, Inc. v. Green Energy Team LLC, 884 F. Supp. 2d 1049, 1059 (D. Haw. 2012)).

Count I of the Complaint alleges that DB Insurance has breached its obligation under the Policies by refusing to cover the losses incurred by The Arc as provided under the Forgery Provision, and by refusing to pay the $250,000 sublimit for each

of the five Policy Periods under the Employee Dishonesty Provision.  Pl. Mot. at 3-4.  DB Insurance has made one payment of $250,000 under the Employee Dishonesty Provision based on the sublimit of a single Policy Period.  Each argument is addressed in turn.

### a. Forgery Provision

The first issue before the Court is whether the Criminal Acts Exclusion bars coverage otherwise triggered under the Forgery Provision.  The Forgery Provision provides enhanced coverage for "loss resulting directly from forgery or alteration of, on or in any check, . . . made or drawn by one acting as [the Arc's] agent or claiming to have been so made or drawn." See Pl. CSF, Ex. 1-5.  Neither party disputes that Ms. Amorin forged checks while she was an employee of the Arc.  Indeed, at the hearing, DB Insurance's counsel agreed that Ms. Amorin was an agent of The Arc and that she committed forgery; but DB Insurance's counsel disagreed that her conduct was covered under the Forgery Provision.  The Court finds that as a bookkeeper and accountant, Ms. Amorin acted as The Arc's agent and authorized representative in preparing checks to pay company expenses.[3/] Pl. CSF ¶ 7; see also Griffin v. Maryland Cas. Co., 57 So.2d 486

---

[3/] The common meaning of "agent" includes authorized representatives and employees.  See Black's Law Dictionary (11th ed. 2019) (defining agent as "[s]omeone who is authorized to act for or in place of another; a representative").

(Miss. 1952) (finding the employee to be acting as an agent over the course of his employment).  The Court also finds that her acts constitute forgery under the Policies.  Therefore, coverage under the Forgery Provision is triggered.  The question here is whether the Criminal Acts Exclusion in the general policy excludes the forgery coverage in the Enhancement Endorsement.

DB Insurance contends that coverage is excluded by the Criminal Acts Exclusion found in the Policy's Causes of Loss Form.  The Criminal Acts Exclusion excludes from coverage loss or damages caused by or resulting from "[d]ishonest or criminal act by [The Arc], any of [its] partners, members, officers, managers, employees (including leased employees), directors, trustees, authorized representatives or anyone to whom [The Arc] entrust the property for any purpose . . . ."  Id.  But, as stated, the Enhancement Endorsement by amendment expressly adds coverage for loss resulting directly from forgery.  Id.  The Court is tasked with deciding whether and how these provisions may be reconciled.  For the reasons outlined below, the Court finds that the Criminal Acts Exclusion does not apply to the enhanced forgery coverage.

First, the Enhancement Endorsement specifically amends the general policy, which includes the Criminal Acts Exclusion, by enhancing coverage to include losses from forgery.

Second, under Hawaii law, "specific provisions in a contract control general provisions where the two conflict." Pac. Com. Servs., LLC v. LVI Env't. Servs., Inc., Civ. No. 16-00245 JMS-KJM, 2018 WL 3826773, at *30 (D. Haw. Aug. 10, 2018) (citing Kaiser Haw. Kai Dev. Co. v. Murray, 49 Haw. 214, 227, 412 P.2d 925 (1966)); see also U.S. Composite Pipe S., LLC v. Frank Coluccio Const. Co., Civ No. 12-00538 JMS-KS, 2014 WL 5023489, at *10 (D. Haw. Oct. 7, 2014) ("In the interpretation of a promise or agreement of a term thereof, . . . specific terms and exact terms are given greater weight than general language.") (citing Restatement (Second) of Contracts § 203 (1981)). Here, the Forgery Provision is the more specific provision. It expressly adds coverage that would otherwise be excluded under the Policies.

But because the Forgery Provision does not specifically say it supersedes the Criminal Acts Exclusion, DB Insurance interprets the Forgery Provision as limited by the Criminal Acts Exclusion of the original Policy. Def. Mot. at 15. The Arc asserts that DB Insurance took an inconsistent position that Ms. Amorin's conduct is not covered under the Forgery Provision because of the Criminal Acts Exclusion yet DB Insurance paid $250,000 under the Employee Dishonesty Provision, which is likewise not explicitly exempted from the Criminal Acts Exclusion.

Generally speaking, Hawaii law focuses on the reasonable expectations of the policyholder.  The "objectively reasonable expectations of policyholders and intended beneficiaries regarding the terms of insurance contracts will be honored even though painstaking study of the policy provisions would have negated those expectations."  Del Monte Fresh Produce (Hawaii), Inc. v. Fireman's Fund Ins. Co., 117 Haw. 357, 368, 183 P.3d 734 (2007).  Under Hawaii law, insurance policies "are to be construed in accord with the reasonable expectations of a layperson."  Sturla, Inc. v. Fireman's Fund Ins. Co., 67 Haw. 203, 209, 684 P.2d 960 (1984).

DB Insurance makes an expressio unius est exclusio alterius argument that because other provisions modify or delete exclusions, the absence of language in the Forgery Provision "delet[ing]" the Criminal Acts Exclusion implies that the exclusion is applicable.  Def. Opp. at 19 & n.5.  DB Insurance refers to subparagraph "C.4.h. for Back-up of Sewers and Drains" in the Enhancement Endorsement which provides that exclusion "1.g. Water" does not apply, but only to the extent of the coverage provided by the endorsement.  See Def. Ex. A at 43-44; see also Def. Ex. A at 49-50 (subparagraph "C.4.s. Glass and Signs" providing that "Section B. EXCLUSIONS" do not apply to this Coverage Extension but for certain exceptions); 52-53 (subparagraph "C.4.w. Off Premises Utility Services" providing

that exclusion "1.e. Utility Services" does not apply); 55

(subparagraph "C.4.z. Temperature or Humidity Change" providing

that exclusions "2.d.(7)(a) and (b)" do not apply).  And other

endorsements (in addition to and separate from the Enhancement

Endorsement, which adds the Forgery Provision and Employee

Dishonesty Provision) include a sentence reading, "[t]he terms

of this endorsement shall not be construed to delete or modify

any of the exclusions in the applicable Causes of Loss form(s)

or Endorsements attached to this policy."  <u>See</u>, <u>e.g.</u>, Def. Ex. A

at 29, 31, and 33.[4/]  Such a disclaimer is absent from the

Forgery Provision.  Moreover, it could also be said that if DB

Insurance wanted to exclude forgery coverage in these

circumstances, it could simply have not added the enhanced

forgery coverage in the first place, or used more precise

language.  <u>See</u> <u>Griffin v. Maryland Cas. Co.</u>, 57 So.2d 486, 490

(Miss. 1952) ("if the Insurance Company purposed to exclude

forgeries of promissory notes, it could have so provided.").

Nonetheless, the Court concludes that Hawaii law does

not expect a reasonable policyholder to apply a canon of

construction to ultimately make conclusions about the plain

language in one part of the policy as impacted by conflicting

---

[4/] The Court notes that each Policy contains a schedule of endorsements.
The primary endorsement at issue is the Commercial Property Enhancement
Endorsement II, otherwise known as the "Enhancement Endorsement."  Any other
endorsement is referred to as an "endorsement."

language in another.  See Del Monte at 368 (emphasizing that the reasonable expectations of policyholders will be honored even though painstaking study of the policy provisions would have negated those expectations); see also Steven v. Fid. & Cas. Co. of New York, 377 P.2d 284, 290 (Cal. 1962) ("We do not believe the maxim [of expressio unius] should serve to defeat the basic rule that the insurance contract should be interpreted against the draftsman.").  It is not reasonable to expect The Arc, or any other policyholder, to employ such a legalistic rule of construction.

Notably, as pointed out earlier, DB Insurance's expressio unius argument is also undermined by its recognition of coverage under the Employee Dishonesty Provision even though that provision similarly is not explicitly exempt from the Criminal Acts Exclusion.

This Court is required to ascertain and prioritize the reasonable expectations of the policyholder.  That is especially true when the policy language is ambiguous.  In this case, The Arc bought insurance which included an Enhancement Endorsement covering forgery by an agent.  The Arc could therefore reasonably expect to receive coverage when an agent committed forgery.  The Arc suffered losses resulting from forgery by an agent during each Policy Period.  The Court is not persuaded by DB Insurance's contention that the "loss is excluded from

coverage even if its cause falls within the scope of the Forgery
[] coverage extension . . . ."  Def. Opp. at 24.

The Court is also not swayed by each party's argument
that the other's interpretation would render some other clause
in the Policy meaningless.  DB Insurance argues that The Arc's
interpretation of the Forgery Provision to encompass forgery by
an employee would render both the Criminal Acts Exclusion and
the Employee Dishonesty coverage extension meaningless.  Def.
Mot. at 16.  It is a rule of Hawaii law that an insurance
provision cannot be interpreted in a way that would "render
insurance coverage largely illusory."  Budget Rent-A-Car Sys.,
Inc. v. Ricardo, 85 Haw. 243, 249, 942 P.2d 507 (1997).  In DB
Insurance's view, the forgery coverage should only cover loss
resulting directly from forgery or alteration by someone other
than an employee or authorized representative.  Def. Opp. at 17.
The problem with that reading is it would render the Forgery
Provision a nullity where the forgery is committed by an agent
of The Arc.  Yet the Forgery Provision specifically enhances
coverage for forgery committed "by one acting as your agent."
Thus, a plain reading of the text allows the competing
provisions to both retain meaning.  The Criminal Acts Exclusion—
found in the general coverage form—continues to exclude criminal
acts other than forgery by The Arc's agents.

In summary, the Court finds that there is no genuine issue of material fact that The Arc's losses trigger coverage under the Forgery Provision and that the Criminal Acts Exclusion does not bar coverage. The Court further finds that a policyholder would reasonably expect that the Forgery Provision affords coverage for exactly the type of losses at issue here. Finally, the Court finds that to the extent that there is an ambiguity between the operation of the Criminal Acts Exclusion and the Forgery Provision, the ambiguity must be decided in favor of the insured. The Court finds that the Criminal Acts Exclusion does not apply to the coverage afforded by the Forgery Provision.

Having found that the Criminal Acts Exclusion does not apply to the enhanced forgery coverage, the Court holds that DB Insurance's failure to pay losses under the Forgery Provision was a breach of the Policies. The Arc's Motion for Summary Judgment is GRANTED and DB Insurance's Motion DENIED insofar as DB Insurance is obligated to cover The Arc's losses incurred under the Forgery Provision in each of the Policies.

As will be discussed infra, DB Insurance's counsel acknowledged that the "one occurrence" and the "non cumulation" provisions (included within the Employee Dishonesty Provision) do not apply to the Forgery Provision.

### b. Employee Dishonesty Provision

The next issue is whether the Employee Dishonesty Provision, which is subject to a $250,000 sublimit per occurrence, is limited to one single policy payment (as DB Insurance argues) or is recoverable across successive Policy Periods (as The Arc argues).

Each Policy has a "one occurrence provision," which defines "occurrence" for purposes of employee dishonesty coverage as "[a]ll loss or damage: (a) Caused by the same person or persons; or (b) Involving a single act or series of related acts."  See Pl. CSF, Ex. 1.  That provision is followed by a "non cumulation provision," which reads, "[r]egardless of the number of years this policy remains in force or the number of premiums paid, no Limit of Insurance cumulates from year to year or period to period."  Id.

The Parties do not dispute that the Employee Dishonesty Provision is triggered by the losses stemming from Ms. Amorin's conduct, and that her conduct is a single "occurrence," at least as defined in each Policy.  The question is whether the coverage is limited to one single Policy Period, or whether The Arc may recover under all five Policy Periods. DB Insurance has taken the former position, arguing that Ms. Amorin's conduct constitutes a single occurrence triggering a single payment of $250,000.  The Arc takes the latter position,

agreeing that each dishonest act constitutes a single

occurrence, but arguing that each Policy is triggered based on a

single "occurrence" in each.  For the reasons outlined below,

the Court finds that The Arc may recover under the Employee

Dishonesty Provision of each of the Policies.

While courts have adopted different interpretations of

similar "occurrence" language in cases involving multiple

policies, many courts have found an occurrence provision to be

temporally ambiguous.  See e.g., Spartan Iron & Metal Corp. v.

Liberty Ins. Corp., 6 F. App'x 176, 179 (4th Cir. 2001)

(observing that the one occurrence provision at issue was

ambiguous because it did not affirmatively indicate whether a

series of acts includes acts occurring outside the policy term);

Karen Kane Inc. v. Reliance Ins. Co., 202 F.3d 1180, 1187 (9th

Cir. 2000) (holding that the insured could recover under

successive policy periods because the policy was ambiguous as to

whether an "occurrence" is temporally limited by the policy

period); Glaser v. Hartford Cas. Ins. Co., 364 F. Supp. 2d 529,

538 (D. Md. 2005) (finding five successive policies were

separate contracts for the purpose of interpreting employee

dishonesty provision); A.B.S. Clothing Collection, Inc. v. Home

Ins. Co., 41 Cal. Rptr. 2d 166, 174 (1995) (reversing the trial

court and finding that the policies did not constitute one

continuous contract despite the fact that each policy stated it

was a renewal of the preceding policy); <u>Robben & Sons Heating,</u>
<u>Inc. v. Mid-Century Ins. Co.</u>, 74 P.3d 1141, 1144 (Or. App. 2003)
(holding that employee thefts during two policy periods
constituted more than one "occurrence" in analyzing the
application of the one occurrence provision).

        Most on point is <u>Karen Kane Inc. v. Reliance Ins. Co.</u>,
in which the Ninth Circuit allowed the insured to recover
multiple sublimits under successive policy periods.  202 F.3d at
1190 (9th Cir. 2000).  The insurance company issued three one-
year commercial insurance policies that included coverage for
employee dishonesty, with a crime coverage limit of $250,000.
<u>Id.</u> at 1181.  After the insured suffered losses in connection
with an employee's dishonesty over a three-year period, the
Ninth Circuit held that the insured could recover under all
three policies.  <u>Id.</u> at 1187.  Analyzing the plain text of the
policy, the court determined that "occurrence" was ambiguous
because the policy was "silent" as to whether it "refers to 'a
single act or series of acts' <u>within a single policy period or</u>
<u>across multiple periods</u>."  <u>Id.</u> at 1187 (emphasis added).
Because the term was temporally ambiguous, the court construed
the term in favor of liability.

        The "occurrence" language in each of the DB Insurance
Policies is nearly identical to that in <u>Karen Kane</u>:

The insurance policy issued to Kane by Reliance provides that Reliance "will pay for loss of, and loss from damage to, Covered Property resulting directly from [employee dishonesty]." The policy places temporal limitations upon loss coverage: "we will pay only for loss that you sustain through acts committed or events occurring during the Policy Period." As noted above, the policy defines "occurrence" as "all loss caused by, or involving, one or more 'employees,' whether the result of a single act of series of acts." The policy further provides that "[t]he most [Reliance] will pay for loss in any one 'occurrence' is the applicable Limit of Insurance shown in the Declarations [$250,000]."

Id. at 1187; see also Pl. CSF, Exs. 1-5.

The Karen Kane court applied California law, which the Hawaii Supreme Court often follows in the insurance context; and the Court finds the Ninth Circuit's analysis is instructive. See Allstate Ins. Co. v. Kim, 121 F. Supp. 2d 1301, 1307 n.3 (D. Haw. 2000) ("[T]he Hawaii Supreme Court has frequently followed California Courts in rendering opinions on insurance matters."). Beginning with the plain language of the Policies at issue here, the provision does not explicitly state that the definition of one "occurrence" extends beyond each Policy Period. In fact, the provision refers to a single "Policy Period," suggesting that the definition of occurrence is relevant only to that single period. Unlike in many of the cases DB Insurance relies on, here there is no prior loss provision, which would

specifically limit coverage to the greater of the current

insurance and prior insurance.[5/]

On the other hand, DB Insurance cites Superstition

Crushing, LLC v. Travelers Cas., 360 Fed. App'x 844 (9th Cir.

2009) for the proposition that the weight of authority from

other jurisdictions is that all loss caused by the same employee

or related series of acts constitutes one occurrence in a single

policy period.  Def. Opp. at 8 & n.2.  Importantly, Superstition

Crushing applies Arizona law; which, unlike California law

(applied in Karen Kane) and Hawaii law, requires that if there

is any ambiguity, the court must first interpret the provision

by looking to social policy and then apply the provision in

favor of the insured.  Superstition Crushing at 845.

Superstition Crushing is therefore distinguishable on this

basis.

DB Insurance also heavily relies on Tenn. Clutch &

Supply, Inc. v. Auto Owners (Mutual) Ins. Co., 556 S.W.3d 203

(Tenn. App. 2017), which concluded that the "one occurrence"

provision applies to subsequent policies.  But Tennessee Clutch

is also distinguishable.  Notably, the subsequent policy in

Tennessee Clutch "expressly provide[d] that it [was] a renewal

---

[5/] E.g., Dan Tait, Inc. v. Farm Family Cas. Ins. Co., 79 N.Y.S.3d 514,
521 (Sup. Ct. 2018) ("If any loss is covered: (1) Partly by this insurance;
and (2) Partly by any prior cancellation or terminated insurance that we or
any affiliate had issued to you...the most we will pay is the larger of the
amount recoverable under this insurance or the prior insurance.").

of the previous policy." Id. at 207. The policies also contained nearly identical language. Id. The Policies at issue here are far from identical—several of the Policies contain different coverage forms, giving them distinct terms and conditions. See Pl. Reply CSF ¶ 22. Tennessee Clutch is further distinguishable in that it included a prior loss provision.[6/] See 2017 WL 1092991, at *11 (Brief for Auto-Owners (Mutual) Insurance Company).

DB Insurance also relies on non-cumulation language providing that "no Limit of Insurance cumulates from year to year or period to period." But the provision lacks clear language regarding a non-cumulation from one policy to the successive policy. Rather, such a provision could be reasonably interpreted to prevent limits from a prior policy surplus carrying over and being added to a subsequent policy period. See A.B.S. at 171. Because the text of the Policy is temporally ambiguous, the Court interprets the term in favor of coverage.

The Arc took out five policies with DB Insurance. Each Policy showed a distinct policy number, prescribed a specific Policy Period, and was supported by a separate premium.

_____

[6/] DB Insurance also relies on a Fifth Circuit case applying Mississippi law, Madison Materials Co., Inc., v. St. Paul Fire & Marine Ins. Co., in which the court rejected the argument that "occurrence" is ambiguous in its application to each policy period. 523 F.3d 541 (5th Cir. 2008). However, the policy at issue in that case contained a prior loss provision similar to that in Tennessee Clutch.

Pl. CSF ¶¶ 2,5.  Each Policy contained a pledge that in return

for the payment of the premium and subject to the terms of "THIS

POLICY," the Insurer would provide insurance as stated in "THIS

POLICY."  E.g., Def. Ex. A at 6.  This is similar to the

policies in A.B.S.:

> Home issued a separate policy document each year.  Each
> policy was effective for a specified "policy period."
> The second policy stated it was a "renewal" of the first;
> the third stated it was a "renewal" of the second.  Each
> policy contained a $100,000 "limit of insurance" as to
> crime coverage.  Each policy contained a pledge from
> Home that "[i]n return for the payment of the premium,
> and subject to all the terms of *this policy*, we agree
> with you to provide the insurance as stated in *this*
> *policy*." (Italics added.)  Each policy also provided:
> "The Policy Period is shown in the Declarations . . .
> [W]e will pay only for loss that you sustain through
> acts committed or events *occurring during this Policy*
> *Period*."  (Italics added.)  The issuance of separate
> policy documents, each of which refers to terms,
> conditions and losses under that particular policy, is
> strong evidence the original policy and the subsequent
> renewal policies were intended to be separate and
> distinct contracts.

A.B.S. at 173.  DB Insurance argues that the Karen Kane court

was required to follow A.B.S. because "there was no other

appellate case law in California."  Def. Opp. at 12.  To the

contrary, in Karen Kane the Ninth Circuit held that "[f]ollowing

A.B.S. and Stonewall, we conclude that under California law,

'occurrence' as defined under the Reliance policy is an

ambiguous term with respect to temporal limitation and therefore

must be construed in favor of liability."  Karen Kane at 1188.

Further, the Court finds that a lay policyholder like The Arc would reasonably expect each Policy to be a separate and distinct contract.  When The Arc paid an additional premium for an additional Policy Period, DB Insurance's coverage obligations commenced anew.  Therefore, the fact that DB Insurance paid the coverage limit for one Policy Period does not relieve it from paying under subsequent Policy Periods.  To interpret the successive Policies as narrowly as suggested by DB Insurance "would essentially render the coverage of successive policies and the payment of premiums meaningless."  Glaser at 538.

In light of the absence of clear and unambiguous language to the contrary, the coverage extended by DB Insurance to The Arc is properly construed as provided through successive and independent contracts.  If DB Insurance wished to limit its liability under its Policies, it had "the duty to do [] so in language that is plain and clear to the lay purchaser of the policy."  Barber v. Chatham, 939 F. Supp. 872, 787 (D. Haw. 1996) (citation omitted).  DB Insurance failed to do so.

In summary, the Court finds that The Arc is entitled to summary judgment under the Employee Dishonesty Provision for payment up to $250,000 under each of the five Policies because the temporal ambiguity in the Employee Dishonesty Provision is interpreted in favor of the insured.  Therefore, the Court finds The Arc is entitled to coverage for up to $250,000 in each of

the five Policies.[7/]  The Court further finds in the alternative
that as a matter of law, a reasonable jury would find that a
layperson, including The Arc, would reasonably expect that the
Employee Dishonesty Provision would provide for payment in each
of the five Policies.

The Arc's Partial Motion for Summary Judgment is
GRANTED and DB Insurance's Motion for Summary Judgment is DENIED
insofar as DB Insurance is obligated to pay the $250,000
sublimit for each of the five Policy Periods under the Employee
Dishonesty Provision.

## III. Bad Faith Claim (Count II)

Count II of the Complaint alleges that DB Insurance's
interpretation of both the Forgery Provision as well as the
Employee Dishonesty Provision is unreasonable and made in bad
faith.  Compl. ¶¶ 74, 82.  The Arc argues that (1) DB Insurance
ignored the plain language of the provisions; (2) DB Insurance
took inconsistent and irreconcilable coverage positions in the
matter; and (3) DB Insurance unreasonably interpreted the
Policies according to The Arc's retained expert.  DB Insurance
moves for summary judgment in its favor on this claim.  The

---

[7/]  The Court notes that under the circumstances, the $1,000,000
coverage for forgery in each Policy provides for full recovery for The Arc
and thus it appears unnecessary to receive any payment from the coverage
under the Employee Dishonesty Provision.

Court notes that The Arc did not move for summary judgment in its favor on the bad faith claim.

      The Hawaii Supreme Court first recognized a bad faith cause of action in the insurance context in Best Place, Inc. v. Penn Am. Ins. Co., 82 Haw. 120, 132, 920 P.2d 334 (1996).  The court held that "there is a legal duty, implied in a first- and third-party insurance contract, that the insurer must act in good faith in dealing with its insured, and a breach of that duty of good faith gives rise to an independent tort cause of action."  Id. at 132.  The recognition of the bad faith claim was grounded on the "atypical" relationship between the insured and the insurer and the "adhesionary aspects of an insurance contract [that] justify the availability of tort recovery."  Id. Moreover, the duty of "good faith" is codified and incorporated by the legislature into the Hawaii insurance code.  See HRS § 431:1-102.  It recognizes that "[t]he business of insurance is one affected by the public interest" and requires "good faith" conduct in "all insurance matters."  Id.

      The tort of bad faith stems both from the contractual relationship between the insurer and the insured, as well as from the codified "good faith" obligation.  See also Aloha Petroleum, Ltd. v. Nat'l Union Fires Ins. Co. of Pittsburgh, PA, Civ. No. 13-0296 DKW-RLP, 2014 WL 3359933, at *5 (D. Haw. July 8, 2014) (citation omitted) (noting that bad faith does not

necessarily turn on the terms of the contract or whether a claim was covered or not, and instead "it turns on the conduct of the insurance company in handling the claim"). "[C]onduct based on an interpretation of the insurance contract that is reasonable does not constitute bad faith." Best Place at 133.

DB Insurance argues that it is entitled to summary judgment on The Arc's bad faith claim because conduct based on a reasonable interpretation of the contract does not constitute bad faith. Def. Mot. at 24. The Court agrees. DB Insurance denied coverage based on an ambiguous policy provision and an unsettled question of law. See Gov't Emps. Ins. Co. v. Dizol, 176 F. Supp. 2d 1005, 1035 (D. Haw. 2001) (finding no bad faith where insurance company facing unsettled question of law refused to indemnify); Colonial Penn Ins. Co. v. First Ins. Co. of Hawaii, 71 Haw. 42, 44, 780 P.2d 1112 (1989) ("We affirm the summary judgment with respect to the alleged bad faith denial of no-fault benefits because, as is obvious from the discussion of the remaining point, the question of who was liable to pay . . . was an open question of law, and there was obviously no bad faith on the part of First Insurance in litigating that issue."). The parties agree that there is no Hawaii appellate law on the specific issues of forgery coverage and application of the Employee Dishonesty Provision sublimit under the facts of this case. Def. Reply at 12. The very fact that so many

jurisdictions have considered the same, or similar, policy language in many contexts, especially regarding the Employee Dishonesty Provision, supports the Court's conclusion that the language at issue is ambiguous. While the Court resolved the coverage issue in The Arc's favor, the Court finds DB Insurance reasonably interpreted the Policies in considering the subject issues with an absence of Hawaii appellate law on point.

DB Insurance also asserts that The Arc sought coverage for its "own deliberate forgery." Def. Opp. at 20-21. Yet DB Insurance fails to cite to the record to demonstrate any potential wrongdoing on the part of The Arc. To the contrary, The Arc has made clear that it was audited every year. Pl. Counter CSF ¶ 37. And, as discussed earlier, DB Insurance did take an inconsistent position in denying coverage under the Forgery Provision because it was not explicitly exempted from the Criminal Acts Exclusion yet acknowledges coverage under the Employee Dishonesty Provision which likewise was not explicitly exempted. Nevertheless, the Court finds that taken as a whole, DB Insurance's conduct in handling the disputed claim was reasonable and consequently finds no bad faith.

The Arc also pleaded "punitive damages against DB Insurance in an amount to be proven at trial." Compl. ¶ 84. Punitive damages may not be awarded for bad faith claims unless evidence reflects by clear and convincing evidence that a

defendant has acted "wantonly or oppressively or with such malice as implies a spirit of mischief or criminal indifference to civil obligations, or where there has been some wil[l]ful misconduct or that entire want of care which would raise the presumption of a conscious indifference to consequences." Best Place at 134 (citation omitted).  Because the facts warrant summary judgment on the bad faith claim, the Court also dismisses The Arc's prayer for punitive damages for the same general reasons.  Moreover, punitive damages are appropriate under Hawaii law only where the defendant has acted with such an "entire want of care which would raise the presumption of a conscious indifference to consequences." Masaki v. General Motors Corp., 71 Haw. 1, 17, 780 P.2d 566 (1989).  The Court finds that DB Insurance's handling of The Arc's claim does not rise to the level of such an entire want of care as enunciated by the Hawaii Supreme Court.

DB Insurance's Motion for Summary Judgment as to The Arc's claim that it acted in bad faith and to dismiss punitive damages is thus GRANTED, but otherwise the Motion is DENIED.


## CONCLUSION

For the foregoing reasons, the Court GRANTS Plaintiff The Arc in Hawaii's Motion for Partial Summary Judgment, ECF No.

25, and GRANTS IN PART AND DENIES IN PART Defendant DB Insurance
Co. Ltd.'s Motion for Summary Judgment, ECF No. 23, as follows:

1. The Arc's Motion for Partial Summary Judgment is GRANTED
   and DB Insurance's Motion DENIED insofar as The Arc is
   entitled to summary judgment on the breach of contract
   claim.  The Arc is entitled to coverage under the Forgery
   Provision and to coverage under the successive Policy
   Periods under the Employee Dishonesty Provision.
   Accordingly, DB Insurance must pay The Arc the total
   coverage of $2,772,716.44 under the Policies, less the
   $250,000 previously paid by DB Insurance and the $150,000
   previously paid under a separate policy issued by Great
   American, which The Arc has already received.

2. DB Insurance's Motion for Summary Judgment as to The Arc's
   claim that it acted in bad faith and to dismiss The Arc's
   prayer for punitive damages is GRANTED.

3. The Arc has also requested prejudgment and post-judgment
   interest.  In diversity actions, "state law determines the
   rate of prejudgment interest, and postjudgment interest is
   governed by federal law."  Am. Tel. & Tel. Co. v. United
   Computer Sys., Inc., 98 F.3d 1206, 1209 (9th Cir. 1996).
   This Court has discretion to award prejudgment interest in
   equity when a judgment is delayed.  See Eckard Brandes,
   Inc. v. Riley, 338 F.3d 1082, 1088 (9th Cir. 2003) (citing

Kalawaia v. AIG Haw. Ins. Co., 90 Haw. 167, 977 P.2d 175 (1999)).  Prejudgment interest is awarded "to correct injustice when a judgment is delayed for a long period of time for any reason, including litigation delays."  Schmidt v. Bd. of Dirs. of Ass'n of Apartment Owners of Marco Polo Apartments, 73 Haw. 526, 534, 836 P.2d 479 (1992).  In contract cases, Hawaii law provides the court discretion to award prejudgment interest and "to designate the commencement date to conform with the circumstances of each case ... [as early as] the date when the breach first occurred."  Haw. Rev. Stat. § 636–16.  A denial of prejudgment interest is proper where there is no showing that the non-moving party's "conduct unduly delayed the proceedings" of the case.  Amfac, Inc. v. Waikiki Beachcomber Investment Co., 74 Haw. 85, 137, 839 P.2d 10 (1992).

The Court finds that The Arc failed to make a showing that DB Insurance's conduct unduly delayed the proceedings of this case.  DB Insurance received The Arc's claim under the Policies on March 20, 2017.  Def. Reply CSF (Expert Report of Stephen D. Johnson)[8/] at 5; see also

---

[8/]  Ordinarily matters raised for the first time in a party's reply will not be considered, unless the matter had earlier been raised by the other party in its opposition.  Thompson v. Comm'r, 631 F.2d 642, 649 (9th Cir. 1980).  In this case, The Arc did include its expert report of Charles M. (Continued . . .)

Compl. ¶ 30. Over the next year, DB Insurance granted The
Arc multiple extensions in completing and submitting its
Proof of Loss. Def. Reply CSF (Expert Report of Stephen D.
Johnson) at 6. At the request of The Arc, DB Insurance
entered into a tolling agreement in March of 2019. Id. at
13; Def. CSF, Ex. I. By April 25 of 2019, attorneys for
both parties had communicated by telephone and by letters
disputing the coverage under the Policies. Def. CSF, Exs.
G, H, I, J. Roughly nine months later, The Arc filed its
Complaint against DB Insurance on February 12, 2020. Def.
CSF ¶ 24.

The Court concludes that The Arc has provided no
persuasive evidence that DB Insurance unduly delayed the
proceeding. See Amfac at 137. Finding that DB Insurance
did not unduly delay the proceedings, the Court holds that
an award of prejudgment interest is not warranted.

The rate of post-judgment interest is governed by
28 U.S.C. § 1961, which provides: "[s]uch interest shall be
calculated from the date of the entry of the judgment, at a
rate equal to the weekly average 1-year constant maturity
Treasury yield, as published by the Board of Governors of

---

Miller in its Opposition to DB Insurance's Motion for Summary Judgment, and
DB Insurance then included its expert report of Stephen D. Johnson in its
Reply Brief, with each expert report extensively analyzing the case.
Therefore, the Court will consider the expert report filed by DB Insurance in
its Reply.

the Federal Reserve System, for the calendar week preceding the date of the judgment." The Arc is entitled to recover post-judgment interest as permitted by statute.

4. The Court finds that The Arc is the prevailing party and is entitled to recover its attorney's fees and costs, and The Arc should submit a petition in accordance with Local Rule 54.2.

There being no remaining claims in this case, the Clerk's Office is DIRECTED to enter judgment and close this case.

IT IS SO ORDERED.

DATED: Honolulu, Hawai`i, June 17, 2021.



Alan C. Kay
Sr. United States District Judge

The Arc in Hawaii v. DB Insurance Co., Ltd., Civ. No. 20-00112 ACK-WRP, Order Granting Plaintiff's Motion for Partial Summary Judgment and Granting in Part and Denying in Part Defendant's Motion for Summary Judgment.